IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No.: 7:23-CV-00005

| | | |
|---|---|---|
| ALYSSA NOBRIGA, ABIGAIL RATCHFORD, CLAUDIA SAMPEDRO, DESSIE MITCHESON, JESSICA BURCIAGA, JESSICA 'CHARM' KILLINGS, MARIANA DAVALOS, MERCEDES TERRELL, URSULA MAYES, VIDA GUERRA, IRINA VORONINA, and KIMBERLY COZZENS a/k/a KIM COZZENS,<br><br>                   Plaintiffs,<br><br>        v.<br><br>LA KUMBALA LOUNGE & RESTAURANT, INC. d/b/a LA KUMBALA LOUNGE & RESTAURANT, SERGIO UMANA PORTILLO and DELORIS CRUMP RYALS<br><br>                   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Alyssa Nobriga, Abigail Ratchford, Claudia Sampedro, Dessie Mitcheson,

Jessica Burciaga, Jessica 'Charm' Killings, Mariana Davalos, Mercedes Terrell, Ursula Mayes,

Vida Guerra, Irina Voronina, Kimberly Cozzens a/k/a Kim Cozzens (collectively, "Plaintiffs"),

file this Complaint against La Kumbala Lounge & Restaurant, Inc. d/b/a La Kumbala Lounge &

Restaurant, Sergio Umana Portillo and Deloris Crump Ryals (collectively "Defendants"), and

respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants'

misappropriation, alteration, and unauthorized publication and use in advertising of images of

- 1 -

Plaintiffs, each of whom are well-known professional models, to promote their night club, La Kumbala Lounge & Restaurant, located in Wilmington, North Carolina ("La Kumbala" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy - misappropriation; c) violation of North Carolina's Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat § 75-1.1 *et seq.*; d) defamation; and e) various common law torts, including conversion.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant(s) from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant La Kumbala Lounge & Restaurant Inc. is a corporation formed under the laws of the state of North Carolina, with its principal place of business located at 7213 Market Street, Wilmington, North Carolina 28405.

8.     According to publicly available records Defendant La Kumbala Lounge & Restaurant Inc. operates La Kumbala Lounge & Restaurant, which is located 7213 Market Street, Wilmington, North Carolina 28405.

9.     According to publicly available records Defendant Sergio Umana Portillo is an individual operating under the laws of the state of North Carolina, who is President of La Kumbala Lounge & Restaurant Inc.

10.     According to publicly available records Defendant Deloris Crump Ryals is an individual who is the owner of the building in which Defendant La Kumbala Lounge & Restaurant Inc. operated.

11.     Venue is proper in the United States District Court for the Eastern District of North Carolina because Defendants' principal place of business is located in Wilmington, North Carolina.

12.     A significant portion of the alleged causes of action arose and accrued in Durham, North Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Wilmington, North Carolina.

## PARTIES

*Plaintiffs*

13.     Plaintiff Alyssa Nobriga ("Nobriga") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Abigail Ratchford ("Ratchford") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

- 3 -

16.     Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

17.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

18.     Plaintiff Jessica 'Charm' Killings ("Killings") is a well-known professional model, and a resident of Los Angeles County, California.

19.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Los Angeles County, California.

20.     Plaintiff Mercedes Terrell ("Terrell") is a well-known professional model, and a resident of Clark County, Nevada.

21.     Plaintiff Ursula Mayes ("Mayes") is a well-known professional model, and a resident of Orange County, California.

22.     Plaintiff Vida Guerra ("Guerra") is a well-known professional model, and a resident of Los Angeles County, California. `

23.     Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

24.     Plaintiff Kimberly Cozzens a/k/a Kim Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

*Defendants*

25.     Defendant La Kumbala Lounge & Restaurant, Inc. is a corporation formed under the laws of the state of North Carolina and registered to conduct business in North Carolina. At all times relevant to this action, La Kumbala Lounge & Restaurant, Inc. operated La Kumbala Lounge & Restaurant in Wilmington, North Carolina.

- 4 -

26.     Defendant Sergio Umana Portillo is the President of Defendant La Kumbala Lounge & Restaurant. who himself, upon information and belief, was the natural person who directed, supervised, participated in, and is responsible for the wrongful acts and omissions complained of herein.

27.     Service of process may be perfected upon Defendant La Kumbala Lounge & Restaurant, Inc. by serving the registered agent for service of process, Sergio Umana Portillo, who can also be served in his capacity as an individual Defendant at 7456 Courtney Pines Road Wilmington, North Carolina 28411.

28.     Defendant Deloris Crump Ryals is the owner of the building in which Defendant La Kumbala Lounge & Restaurant, Inc. operated and is responsible for the wrongful acts and omissions of herein.

29.     Service of process may be perfected upon Defendant Deloris Crump Ryals at her residence at 906 Bayshore Drive, Wilmington, North Carolina 28411.

## FACTUAL ALLEGATIONS

30.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

31.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

32.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by

- 5 -

Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

33. In the case of each Plaintiff, this apparent claim was false.

34. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

35. No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

36. Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

37. In other cases, Defendants misappropriated Plaintiffs' Images from other sources through unlawful violation of copyrights and or licenses that were not and never were held by Defendants.

***Plaintiffs' Individual Backgrounds and Careers***

38. Plaintiff Nobriga is trained as a psychotherapist and works as a professional coach with individuals and corporations, both nationally and internationally. She obtained her masters degree in Clinical Psychology, specializing in Mind-Body Psychotherapy from The Chicago School of Professional Psychology. Alyssa is currently on faculty at the University of Santa Monica where she holds a second masters degree in Spiritual Psychology, with an emphasis on Consciousness, Health and Healing. She is a graduate of The School for The Work, has extensive training in Imago Couples Therapy as well as an advanced certification from the Hakomi Institute in mindfulness-based therapeutic practices and is certified as a success coach. Alyssa is a spiritual

- 6 -

advisor for CEOs and senior executives, she facilitates transformational group intensives and women's leadership and empowerment workshops. She also leads wellness retreats around the world centered on mindfulness and conscious living as well as 6-month mastermind intensives supporting women in standing forward as leaders and soul-centered professional coaches. She is a contributor to various publications such as *The Huffington Post*, *Positively Positive* and *The Daily Love* and is a featured expert on Deepak Chopra's YouTube channel. Alyssa's enthusiasm for this work has led her to develop a unique way of blending multiple modalities and life experiences to support people in a soulful and practical way. Her intention and vocation is to assist others in leading more open, authentic, loving, and fulfilling lives.

39.  That we know of, Nobriga is depicted in the photos in Exhibit "A" to promote La Kumbala on its Facebook page. These Images were intentionally altered to make it appear that Nobriga was either a stripper working at La Kumbala that she endorsed La Kumbala, or that she was otherwise associated or affiliated with La Kumbala.

40.  Nobriga has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.  Plaintiff Ratchford born in Pennsylvania, is an American model and aspiring actress known for taking the Internet by storm in 2013. Abigail's deft use of social media, combined with the provocative pictures showcasing the brunette's 36DD-24-36 frame, proved a winning combination. This formula helped land her on numerous men's websites, a six-page print spread in a popular Australian men's magazine, and also led to her being selected to audition for parts in Maxim, a feature film, and television shows found on ABC and E! Networks. She has over 9.1

- 7 -

million followers on Instagram, over 4.1 million followers of Facebook, and over 1 million followers on Twitter.

42.     That we know of, Ratchford is depicted in the photos in Exhibit "B" to promote La Kumbala on its Facebook page. These Images were intentionally altered to make it appear that Ratchford was either a stripper working at La Kumbala, that she endorsed La Kumbala, or that she was otherwise associated or affiliated with La Kumbala.

43.     Ratchford has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.     Plaintiff Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Sampedro has three children, and is married to former Green Bay's star defensive end Julius Peppers.

45.     That we know of, Sampedro is depicted in the photos in Exhibit "C" to promote La Kumbala on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Sampedro was either a stripper working at La Kumbala that she endorsed La Kumbala, or that she was otherwise associated or affiliated with La Kumbala.

46.     Sampedro has never been employed at La Kumbala, has never been hired to endorse

- 8 -

La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

47. Plaintiff Mitcheson competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of Playboy Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. Mitcheson entered *Maxim* magazine's annual "Hometown Hottie" contest along with thousands of models, she was crowned *Maxim* magazine's "Hometown Hottie". Later that year, Mitcheson was #100 on *Maxim's* "Hot 100" list. She has graced the pages of multiple issues of *Maxim*, including a three-page spread, two centerfolds, and the cover for the May 2014 "Navy" issue. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v. Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson currently has 406 thousand Instagram followers, over 22 thousand Facebook followers, and 13.9 thousand Twitter followers.

48. That we know of, Mitcheson is depicted in the photos in Exhibit "D" to promote La Kumbala on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Mitcheson was either a stripper working at La Kumbala that she endorsed La Kumbala, or that she was otherwise associated or affiliated with La Kumbala.

49. Mitcheson has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

- 9 -

50.     Plaintiff Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's,* "Neighborhood Knockout," contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, over 49 thousand Facebook likes, and over 192 thousand followers on Twitter.

51.     That we know of, Burciaga is depicted in the photo in Exhibit "E" to promote La Kumbala on its Facebook page. This Image was intentionally altered to make it appear that Burciaga was either a stripper working at La Kumbala that she endorsed La Kumbala, or that she was otherwise associated or affiliated with La Kumbala.

52.     Burciaga has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

53.     Plaintiff Killings is a model and music video star.  She has appeared in a number of popular magazines such as *SHOW, Blackmen, Straight Stuntin, Smooth,* and *Mixed*. Killings has

also appeared in several music videos as the lead talent including Far East Movement ft. Snoop Dogg's video "OMG," Slim Thug and Baby Bash's video "Swananana," Big Sean and Chris Brown's video "My Last," Bow Wow's video "Pretty Lady," and Jay Sean ft. Nicki Minaj's video "2012." Killings has 1.9 million Instagram followers and 53.1 thousand Twitter followers.

54.  That we know of, Killings is depicted in the photos in Exhibit "F" to promote La Kumbala on its Facebook page. These Images were intentionally altered to make it appear that Killings was either a stripper working at La Kumbala that she endorsed La Kumbala, or that she was otherwise associated or affiliated with La Kumbala.

55.  Killings has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

56.  Plaintiff Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with her 563,884 Instagram, Twitter, and Facebook followers.

57.  That we know of, Davalos it is depicted in the photos in Exhibit "G" to promote La Kumbala on its Facebook page. These Images were intentionally altered to make it appear that

Davalos was either a stripper working at La Kumbala that she endorsed La Kumbala, or that she was otherwise associated or affiliated with La Kumbala.

58.     Davalos has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

59.     Plaintiff Terrell is an American model and spokesmodel. Terrell is a contract model who travels and works with Monster Energy Supercross. Terrell also appears with The Superbike Races special events and also with Moto GP Championship races. Terrell is probably best known and has a huge social media following as the main Ring Girls for Bellator MMA fighting. Terrell has featured in a number of magazines and has appeared on the cover of *Wheels and Heels* magazine, *Dub Magazine, Beer magazine, Girls Lowrider* and many more.

60.     That we know of, Terrell is depicted in the photos in Exhibit "H" to promote La Kumbala on its Facebook page. These Images were intentionally altered to make it appear that Terrell was either a stripper working at La Kumbala that she endorsed La Kumbala, or that she was otherwise associated or affiliated with La Kumbala.

61.     Terrell has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

62.     Plaintiff Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in *Maxim* magazine. She is well known as a "suitcase model #5" from the hit game show *Deal or No Deal*. Mayes has appeared on *Minute To Win It*,

*The Tonight Show*, and *The Jay Leno Show*. She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, *Vogue, Elle, In Style, Cosmopolitan*, and *Marie Claire*, to name a few. Mayes is currently a cover model and a star of the game *Juiced 2: Hot Import Nights*. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency.

63.     That we know of, Mayes is depicted in the photos in Exhibit "I" to promote La Kumbala on its Facebook page. These Images were intentionally altered to make it appear that Mayes was either a stripper working at La Kumbala that he endorsed La Kumbala, or that he was otherwise associated or affiliated with La Kumbala.

64.     Mayes has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of his Image, and has suffered, and will continue to suffer, damages as a result of same.

65.     Plaintiff Guerra is a Cuban model currently living in the United States. Her first national exposure came when she appeared in a lingerie spread for *FHM* in December of 2002 and became "*FHM*'s "Model of the Year" in 2004. Since then, Guerra has been featured in many magazines, including *DUB, Smooth, Escape*, and *Open Your Eyes*. Guerra has made multiple appearances on several Spanish language television programs such as El Gordo y la Flaca (The Fat Guy and The Skinny Girl). She has also became a staple in music videos, appearing in "Shake Ya Tailfeather" performed by Nelly, P. Diddy, and Murphy Lee, from the Bad Boys II soundtrack, 2003, "The New Workout Plan" performed by Kanye West, 2004, and in "Obsession (No Es Amor)" performed by Frankie J ft. Baby Bash, 2005, among others. In addition, Guerra has

- 13 -

appeared in a commercial for Burger King's Tender Crisp Bacon Cheddar Ranch, a number of sketches on The Chappelle's Show, and the film, "National Lampoon's Dorm Daze 2." She lent her voice to the video game, "Scarface: The World Is Yours." In 2005, Guerra was voted Number 26 in *FHM*'s "Top 100 Sexiest Females" and has been named the winner of the magazine's "Best Butt Award". She also produced her own swimsuit calendars and accompanying "behind the scenes" DVDs and a 2006 DVD titled, "Vida Guerra: Exposed." She continues to be extremely in demand as a spokeswoman for fitness and fitness equipment, television shows, and movies. Guerra enjoys over 2,443,580 followers across Facebook, Instagram, and Twitter.

66.    That we know of, Guerra is depicted in the photo in Exhibit "J" to promote La Kumbala on its Instagram page. This Image was intentionally altered to make it appear that Guerra was either a stripper working at La Kumbala that he endorsed La Kumbala, or that he was otherwise associated or affiliated with La Kumbala.

67.    Guerra has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of his Image, and has suffered, and will continue to suffer, damages as a result of same.

68.    Plaintiff Voronina is an international model and actress. After becoming *Playboy's* Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as *FHM, Maxim, Playboy* (in 20 countries), *Max*, *Ocean, Shape, 944, Knockout, Q*, *People*, *Kandy, Rukus, Vape* and *Browz* magazines. In 2008, Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the

- 14 -

NYSE closing bell representing Constellation Brands. In 2013, Voronina was named *Kandy Magazine's* Model of the Year as a result of her fans downloading the highest number of digital issues that year. She loves connecting with her fans and stays active daily across all social media outlets for her followers on Facebook, Instagram, Twitter and YouTube. Voronina got her first big screen break in "Reno 911!: Miami.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," & "Piranha 3DD," "Laser Team," and "Killing Hasselhoff." She starred in the indie action flick "Scramble" which she also co-produced. Voronina tours and performs nationally as a stand-up comedian. She has more than 4.5 million social media followers.

69.     That we know of, Voronina is depicted in the photos in Exhibit "K" to promote La Kumbala on its Facebook page. These Images were intentionally altered to make it appear that Voronina was either a stripper working at La Kumbala that he endorsed La Kumbala, or that he was otherwise associated or affiliated with La Kumbala.

70.     Voronina has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of his Image, and has suffered, and will continue to suffer, damages as a result of same.

71.     Plaintiff Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and

Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

72. That we know of, Cozzens is depicted in the photo in Exhibit "L" to promote La Kumbala on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Cozzens was either a stripper working at La Kumbala that he endorsed La Kumbala, or that he was otherwise associated or affiliated with La Kumbala.

73. Cozzens has never been employed at La Kumbala, has never been hired to endorse La Kumbala, has never been otherwise associated or affiliated with La Kumbala, has received no remuneration for Defendants' unauthorized use of his Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

74. Defendants operate La Kumbala, where they engage in the business of selling alcohol and food in a sexually charged atmosphere.

75. In furtherance of their promotion of La Kumbala, Defendants own, operate, and control La Kumbala social media accounts, including its Facebook, Twitter, and Instagram accounts.

76. Defendants used La Kumbala Facebook, Twitter, and Instagram accounts to promote La Kumbala, and to attract patrons.

77. Defendants did this for their own commercial and financial benefit.

78. Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at La Kumbala, endorsed La Kumbala, or was otherwise associated or affiliated with La Kumbala.

- 16 -

79.    Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed La Kumbala to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

80.    Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by La Kumbala, and at no point have any of the Plaintiffs ever endorsed La Kumbala, or otherwise been affiliated or associated with La Kumbala.

81.    All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

82.    Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

83.    Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

84.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

85.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be

- 17 -

assigned, known in the modeling industry at the "term."

86.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

87.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed La Kumbala.

88.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

89.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with La Kumbala.

90.     At no point was any Plaintiff ever contacted by any Defendants, or any representative of any Defendants, to request the use of any of Plaintiffs' Images.

91.     No Defendants ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

92.     No Defendants ever paid any Plaintiff for its use of her Images on any promotional materials, including La Kumbala's website, Twitter, Facebook, or Instagram accounts.

93.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

94.     Defendants' use of Plaintiffs' Images in some cases was also in violation of copyrights and/or licenses held by others, who had lawful relationships with Plaintiffs based on the standard business practices in the modeling industry.

- 18 -

95. Defendants' breaches of copyrights and/or licenses held by others likewise had the purpose and effect of injuring Plaintiffs in the ways complained of herein, as Plaintiffs were foreseeable victims of harm from Defendants' breaches.

<u>**FIRST CAUSE OF ACTION**</u>
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

93. The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with the Club, nor had they agreed to appear in La Kumbala advertisements.

94. Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

95. Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended La Kumbala.

96. Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

97. Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed La Kumbala, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiff's employment at or affiliation with La Kumbala

98. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with La Kumbala.

99. Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with La Kumbala, and the goods and services provided by La Kumbala.

100. Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be

determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)

101.    Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with La Kumbala, or worked at, sponsored, or approved of La Kumbala goods, services or commercial activities.

102.    This was done to promote and attract clientele to La Kumbala, and thereby generate revenue for the Defendants, for Defendants' commercial benefit.

103.    Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with La Kumbala, nor worked at, sponsored, or approved of La Kumbala s goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with La Kumbala.

104.    Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at La Kumbala.

105.    Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of La Kumbala and the goods and services provided by La Kumbala.

106.    Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Common Law Right of Privacy - Misappropriation)

107.    Defendants have appropriated each Plaintiff's likeness for Defendants' commercial

purposes without authority or consent from Plaintiffs.

108.    Defendants misappropriated Plaintiffs' likenesses by publishing their Images on La Kumbala's website or related social media accounts as part of Defendants' advertising campaign.

109.    La Kumbala's website and social media accounts were designed to advertise and attract business to La Kumbala and generate revenue for Defendants.

110.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

111.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

112.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

113.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for La Kumbala.

114.    At no point did any Defendants ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

115.    Defendants were at all relevant times aware that they had never received any

Plaintiffs' permission or consent to use their Images in any medium for any purpose.

116.    At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their Images.

117.    Defendants' misappropriation of Plaintiffs' Images in some cases was in violation of copyrights and licenses lawfully held by others, and Defendants' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendants' misappropriation of their Images.

118.    Plaintiffs have been damaged in amounts to be proved at trial.

## FOURTH CAUSE OF ACTION
**(Violation of North Carolina's Unfair and Deceptive Trade Practices Act,
N.C. Gen. Stat. § 75-1.1 *et seq.*)**

119.    Defendants operated La Kumbala's website and social media accounts in order to promote La Kumbala, to attract clientele thereto, and to thereby generate revenue for Defendants.

120.    As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendants in North Carolina.

121.    Defendants published Plaintiffs' Images on La Kumbala's website and social media accounts to create the false impression that Plaintiffs were either strippers working at La Kumbala, endorsed La Kumbala, or were otherwise affiliated, associated, or connected with La Kumbala.

122.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with La Kumbala.

123.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

124.    Defendants' false advertising, misrepresentations, and breaches of their duties to

- 22 -

Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

125.    Upon information and belief, members of the public relied upon and were in fact deceived by Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

126.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina, and caused injury to the Plaintiffs as complained of herein.

127.    Defendants' advertising practices offend the public policy of North Carolina insofar as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

128.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at La Kumbala.

129.    Defendants' advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with La Kumbala.

130.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

131.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs'

Images on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

132. As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial.

133. Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

134. Plaintiffs are further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1

## FIFTH CAUSE OF ACTION
### (Negligence, Gross Negligence, and *Respondeat Superior*)

135. Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

136. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

137. Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

138. Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

139. Defendants breached their duty of care to both Plaintiffs and consumers by failing

- 24 -

to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

140.    Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and North Carolina law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

141.    Defendants' breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

142.    Defendants' breaches were the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

143.    As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Conversion)

144.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

145.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain.

146.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

- 25 -

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

147.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote La Kumbala to the general public and potential clientele.

148.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at La Kumbala or endorsed La Kumbala.

149.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

150.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

151.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to La Kumbala.

152.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

153.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

154.    Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

155.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

156.    Although Defendants have availed themselves of the benefit of being associated

- 26 -

with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at La Kumbala, endorse La Kumbala, or are otherwise affiliated with La Kumbala, Defendants have not compensated Plaintiffs.

157.   Plaintiffs are therefore entitled to reasonable compensation for La Kumbala's unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For the Defendants to be adjudged jointly and severally liable to Plaintiffs upon Plaintiffs' first through eight causes of action;

(b) For an award of actual damages to be paid by Defendants to Plaintiffs, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(c) For an order ***permanently enjoining*** Defendants from using Plaintiffs' Images for any purpose;

(d) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16;

(e) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16.1; and

(f) For such other and further relief as the Court may deem just and proper.

## SIGNATURE PAGE FOLLOWS

- 27 -

Respectfully submitted this 10th day of January, 2023.


| | |
|---|---|
| /s/ John V. Golaszewski | /s/Matthew R. Gambale |
| JOHN V. GOLASZEWSKI | MATTHEW R. GAMBALE |
| N.Y. Bar No. 4121091 | N.C. Bar No. 43359 |
| THE CASAS LAW FIRM, P.C. | OSBORN GAMBALE BECKLEY & BUDD PLLC |
| 1740 Broadway, 15th Floor | 721 W. Morgan Street |
| New York, NY 10019 | Raleigh, North Carolina 27603 |
| john@casaslawfirm.com | matt@counselcarolina.com |
| T: 646.872.3178 | T: 919.373.6422 |
| F: 855.220.9626 | F: 919.578.3733 |
| *Attorneys for Plaintiff* | *Local Civil Rule 83.1(d) Attorneys for Plaintiff* |